IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CAVIUM, INC., <br><br> Plaintiff, <br><br> vs. <br><br> IN RE: SUBPOENA TO CROWN POINT TRANSACTIONS LLC AND ANDREW HEIN IN CONNECTION WITH: ALACRITECH, INC., <br><br> Defendant. | CAUSE NO. 1:17-mc-0070 <br><br> Related to Case Nos. 2:16-cv-00693-RWS-RSP (LEAD CASE), 2:16-cv-00692-RWS-RSP, and 2:16-cv-00695-RWS-RSP <br><br> Pending in: The United States District Court for the Eastern District of Texas |

**CAVIUM, INC.'S BRIEF IN SUPPORT OF MOTION TO COMPEL FURTHER RESPONSES TO SUBPOENAS TO PRODUCE DOCUMENTS TO CROWN POINT TRANSACTIONS LLC AND ANDREW HEIN**

I.     **INTRODUCTION**

Cavium, Inc. ("Cavium") is an Intervenor in a patent infringement action currently pending in the U.S. District Court for the Eastern District of Texas, styled *Alacritech, Inc. v. Dell Inc.*, Case No. 2:16-cv-00695-JRG-RSP, which has been consolidated for pretrial purposes under the "lead action" *Alacritech, Inc. v. CenturyLink, Inc., et al.*, Case No. 2:16-cv-00693-JRG-RSP (collectively, the "Action").  Plaintiff Alacritech, Inc.'s ("Plaintiff") current business is asserting its patents in order to obtain licensing revenue.  Cavium's subsidiary designs, makes and sells network adapters that have been accused in the Action of practicing Plaintiff's patents (an allegation Cavium denies).  Non-party Crown Point Transactions LLC, its now-defunct affiliate A-Tech LLC and the apparent principal of both entities, Andrew Hein (collectively "Crown Point"), allegedly conducted a licensing campaign for Plaintiff's patent portfolio.  The campaign included pre-lawsuit communications with Cavium and are highly relevant to claims and defenses in the Action, including those concerning willfulness, indirect infringement and damages.  Crown Point is in the business of licensing patents, was engaged by Plaintiff to license its patent portfolio, and even took the extraordinary step of forming a new entity, A-Tech, for the purpose of monetizing Plaintiff's patent portfolio.  Plaintiff has indicated (in formal written discovery and in deposition) that Crown Point is an important source of evidence concerning its licensing efforts involving the Patents-in-Suit.

Cavium issued and properly served subpoenas to produce documents on Crown Point Transactions and Andrew Hein on July 20, 2017.  Crown Point responded on August 3, 2017, with boilerplate objections and responses citing to the same collection of Plaintiff's documents and Plaintiff's privilege log entries for each request.  Crown Point did not identify, produce or log a single document in its own possession, custody or control.  Of the Plaintiff's documents

identified, many turned out to be corrupted.  Crown Point's counsel – who is also Plaintiff's counsel—has failed and refused to provide any explanation concerning the corrupted documents or lack of any production whatsoever by Crown Point.  Mr. Hein also responded on August 3, 2017, with boilerplate objections and an identical statement in each response indicating he had not responsive documents.

Cavium continued to attempt to work with Plaintiff's/Crown Point's counsel to obtain information about the Crown Point relationship with Plaintiff and the licensing campaign from Plaintiff and/or Crown Point.  Plaintiff and its counsel have just indicated on September 25, 2017, during the deposition of Plaintiff's CEO, that Plaintiff has produced all documentation it has concerning Crown Point and that it does not have, for example, more complete or final versions of certain agreements with Crown Point beyond what has been produced to date.  Plaintiff's principal and CEO, Larry Boucher, Plaintiff's primary contact with Crown Point, was examined at his deposition on September 25, 2017, concerning licensing efforts.  Mr. Boucher was not able to answer most questions concerning Plaintiff's allegations and written discovery responses regarding pre-suit licensing efforts and repeatedly suggested that Cavium ask Crown Point and Mr. Hein about the various documents and information Cavium seeks.  Plaintiff also has represented in recent written discovery responses in late September that Andrew Hein (Crown Point's principal) has additional information that Cavium seeks about the pre-suit licensing campaign.  While Plaintiff's/Crown Point's counsel has recently added Mr. Hein to Plaintiff's list of likely witnesses in its initial disclosures (after Cavium served the Subpoenas) and has agreed to produce Mr. Hein for deposition, no documents have been produced from Crown Point or Mr. Hein.

## II. BACKGROUND

### A. Crown Point's Documents Are Important To The Underlying Action

At least three key issues in the underlying litigation may turn on the evidence or lack thereof in the possession, custody or control of Crown Point and Mr. Hein. Plaintiff in the underlying action purports to allege induced and contributory infringement against Cavium, which require knowledge that the induced acts constitute patent infringement. *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011); *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326, 1330 (Fed. Cir. 2010). To the extent Alacritech seeks damages prior to the filing of this action, it must show "actual notice" which "requires the affirmative communication of a specific charge of infringement by a specific accused product or device." *Amsted Indus. Inc. v. Buckeye Steel Castings,* 24 F.3d 178, 187 (Fed. Cir. 1994). Plaintiff also purports to allege willful infringement in this action which also requires actual knowledge of the asserted patents. *See Jenkins v. Logicmark, LLC,* 2017 WL 376154, *5 (E.D. Va. Jan. 25, 2017). The details of Crown Point's pre-suit activities and communications will impact at least these three significant aspects of the actions.

### B. Cavium and the Other Parties to the Action Diligently Sought Discovery from Plaintiff Concerning Licensing, Valuation and Pre-Suit Communications

The information now sought from Crown Point has been diligently sought from Plaintiff throughout the litigation. Cavium has propounded written discovery to Plaintiff relevant to Crown Point's activities (with responses received on September 18, 24 and 29) and now has examined Plaintiff's witnesses (on September 25 and 29) concerning both Plaintiff's licensing efforts generally and concerning Crown Point's and its affiliate's activities specifically. *See* Declaration of Megan Whyman Olesek ("Olesek Decl."), ¶¶ 13-16. Plaintiff has provided limited information and has indicated in written discovery responses and at deposition that

Crown Point and Mr. Hein have additional information that Alacritech lacks, even as their shared counsel decline to provide any documents beyond those previously produced by Plaintiff. Olesek Decl., ¶¶ 13-16.

On September 25, 2017, Plaintiff's CEO, Mr. Boucher, was examined at deposition about the Crown Point relationship and various documents concerning Crown Point. Olesek Decl., ¶ 15. During his deposition, Mr. Boucher indicated that Crown Point and Mr. Hein were a source of information Plaintiff lacks concerning Crown Point's activities involving Plaintiff's patents. Olesek Decl., ¶ 15. Plaintiff produced additional documents concerning Crown Point during the deposition of Mr. Boucher on September 25, 2017, but these documents indicate that additional attachments, signatures and versions of the documents exist that have not been located by Plaintiff. Olesek Decl., ¶ 14. Defendants and Intervenors in the Action also took the deposition of Plaintiff's CFO, Esther Lee, on September 29, who was another frequent point of contact with Crown Point in addition to Mr. Boucher. Ms. Lee was not able to provide any additional information about the Crown Point activities. Olesek Decl., ¶ 16.

Having exhausted all avenues of party discovery to obtain documentation of Crown Point's activities and knowledge, and having made several good faith attempts to meet and confer with Plaintiff's/Crown Point's counsel to reach a resolution, Cavium now seeks the Court's assistance in compelling Crown Point and Mr. Hein to search for and produce their own relevant documents.

    **C.**    **Cavium's Subpoena And Crown Point's Boilerplate Responses**

On July 20, 2017, Cavium issued subpoenas to produce documents to Crown Point and Mr. Hein (the "Subpoenas"), which were duly served on the same date. Olesek Decl., ¶¶ 2, 3; Exs. A, B. The Subpoenas' requests are narrowly tailored and proportional to the needs and issues in this case, focusing on documents concerning the Patents-in-Suit, actual and potential

agreements and licenses thereto, associated communications and negotiations concerning licensing and valuation of the Patents-in-Suit, Crown Point's relationship to Plaintiff and its affiliated entities, and pre-suit contacts with Cavium and its wholly owned subsidiary, QLogic.

Plaintiff's counsel, acting on behalf of Crown Point, responded to the Crown Point subpoena with a litany of boilerplate objections and identical responses to each request, irrespective of the subject matter. Olesek Decl., ¶ 3; Ex. C. After its long list of objections, in response to each and every request, Crown Point states the following:

> Subject to and without waiving the foregoing general and specific objections, Custodian responds as follows: Alacritech collected and produced all relevant, non-privileged documents pre-dating June 30, 2016 within the Custodian's possession, custody or control located after a reasonable and diligent search at ALA02139922 – ALA02139972; ALA02139979 –ALA02139984; ALA07370874 – ALA07370909; ALA07373646 – ALA07373648;ALA07379396 – ALA07380475; and ALA07386361 – ALA07387083. Documents withheld on the basis of any applicable privilege or Fed. R. Civ. Proc. 26 were included in Alacritech's privilege log served on April 4, 2017 at Doc Nos. 101-345.

Olesek Decl., ¶ 3; Ex. C at pp. 13, 15, 16, 18, 21, 24, 27, 29, 30, 33, 36, 38, 39. The responses are inadequate and not indicative of a full, good faith and diligent search for responsive documents by Crown Point. Indeed, that Crown Point provided the same stock response to each and every request, no matter the subject, indicates a lack of diligence and seriousness in providing full and complete responses.

Moreover, 45 of the documents identified as responsive had been deliberately marked prior to production with the typed word "corrupt" and no content was visible on the produced images. Olesek Decl., ¶¶ 6, 7, 8; Exs. E, F, G. From the Bates numbers it is apparent that the corrupt documents were produced months before the subpoenas were served. Olesek Decl., ¶ 12. Plaintiff's/Crown Point's counsel provides no explanation for why they added Bates numbers to known corrupted documents and produced them, or how they determined months later that the

Case 2:17-mc-00002-JRG-RSP   Document 4   Filed 10/04/17   Page 7 of 19 PageID #: 26

documents were responsive to the Crown Point subpoena if they cannot be read, or how they came to be corrupted and unreadable.  Olesek Decl., ¶¶ 8, 9, 11, 12; Exs. G, H, I.

If responsive documents are corrupt or otherwise lost or damaged, Crown Point must explain the circumstances and identify what it or its attorneys apparently were able to identify as responsive documents and later deemed to be corrupted.  If any documents responsive to these requests are being withheld on the basis of an objection or privilege, Crown Point must identify the withheld documents and the basis, and should provide its own privilege log rather than relying on Plaintiff's privilege log (which appears to include numerous entries concerning Crown Point that recent discovery has suggested were not, in fact, subject to privilege).

### D. Crown Point's Failure To Produce Responsive Documents

Crown Point's responses to each and every request are insufficient and reflect a lack of reasonable effort to locate responsive documents.  The full requests and responses are provided with this motion for the Court's reference.  *See* Olesek Decl., ¶¶ 2, 4; Exs. A, C.  The essence of Cavium's requests and Crown Point's responses (or lack thereof) are highlighted below.

<u>Request Nos. 1, 9 and 10</u>

Request No. 1 seeks documents concerning any actual, potential or draft agreement, license, sale, settlement agreement or covenant not to sue concerning the subject matter of any Patent-in-Suit.  Request No. 9 seeks documents concerning or reflecting revenue from efforts to license or sell the Patents-in-Suit.  Request No. 10 seeks documents concerning or reflecting the success, failure, progress, or lack of progress of any Person or entity to commercialize, sell, assign, purchase, monetize, or license any Patent-in-Suit.

Crown Point, Plaintiff's licensing arm, offers a laundry list of objections (identical for each and every response) but has produced no agreements, draft agreements, negotiations or

- 6 -

terms pertaining to license agreements whatsoever.  Crown Point has provided no documents reflecting revenue or any other aspect of its efforts to monetize any Patent-in-Suit.  Crown Point has not indicated (as it must) whether it has withheld any document responsive to this request on the basis of any non-privilege objection, and has not identified the objection and the documents withheld. *See* Fed. R. Civ. P. 45(e)(2)(A).

<u>Request No. 2</u>

Request No. 2 seeks documents containing the numbers of the Patents-in-Suit.  Crown Point does not indicate that it has searched the patent numbers and provided documents containing those terms.  Rather, as noted, its response recites the same set of documents (many of which are corrupt) and 244 privilege log entries of Alacritech cited in every other response.

<u>Request Nos. 3 and 4</u>

Request Nos. 3 and 4 seek documents concerning communications with Cavium or QLogic (Cavium's subsidiary).  It does not appear that the set of documents identified (the same documents identified for every other request) all reference Cavium or QLogic.  The response also cites to 244 privilege log entries from Plaintiff's privilege log.  Crown Point has not provided its own privilege log for any documents it has withheld, and does not specify whether it contends that the 244 identified entries on Plaintiff's privilege log are responsive to the category concerning communications with Cavium or QLogic.  If any documents responsive to these requests are being withheld on the basis of any objection, Crown Point must identify the withheld documents and the objection, and must provide a privilege log for any documents withheld on the basis of a privilege or work product assertion.  If responsive documents are corrupt or otherwise lost or destroyed, Crown Point must explain the circumstances and identify what was identified as responsive documents before it was lost or destroyed.

Request Nos. 5, 7 and 8

Request No. 5 generally seeks all memoranda, opinions, reports and analyses regarding any Patent-in-Suit.  Request No. 7 seeks "All Documents concerning or reflecting the value of any Patent-in-Suit and/or any Alacritech Patent Portfolio containing one or more Patent-in-Suit, including but not limited to Documents concerning or reflecting the value assessed or asserted by You, any Licensee or anyone else."  Request No. 8 seeks "All publications, patents, references, inventions, devices, products, systems, uses, sales, offers for sale, or other activity ever identified, disclosed or produced to You concerning the subject matter of any Patent-in-Suit, that another Person has asserted is prior art, whether or not You agree."  It does not appear that a single document responsive to these requests has been provided.  Again, the stock response indicates that the particular requests were not actually evaluated and considered by Crown Point.  If responsive documents are being withheld on the basis of an objection, Crown Point must identify them and specify the objection it contends is applicable.  If responsive documents are corrupt or otherwise lost or damaged, Crown Point must explain the circumstances and identify what was apparently identified as responsive and later deemed to be corrupted, lost or damaged.

Request No. 6

Request No. 6 seeks agreements between Crown Point Transactions, Crown Point Advisors and/or Andrew Hein and Alacritech or A-Tech.  It does not appear that a diligent effort was made to respond to this request, as evidenced by the stock response.  No agreement between or among the Crown Point entities and A-Tech, or between any entity and Mr. Hein, has been produced.  Agreements between Alacritech and A-Tech/Crown Point have been provided by Plaintiff, but some appear to be incomplete or not fully executed.  On September 25, Plaintiff's CEO indicated at his deposition that Mr. Hein would have the complete, executed versions of the

agreements. If responsive documents are being withheld on the basis of an objection, Crown Point must identify them. If they are withheld based on a privilege assertion, Crown Point must provide a privilege log. If responsive documents are corrupt or otherwise lost or damaged, Crown Point must explain the circumstances and describe what was identified as responsive and later deemed to be corrupted.

### E. Mr. Hein's Boilerplate Responses

Mr. Hein's responses to his subpoena, also prepared by Plaintiff's counsel on his behalf, recited the same response to each and every request (following the same litany of objections):

> Subject to and without waiving the foregoing general and specific objections, Custodian responds as follows: Custodian does not have any documents responsive to this Request in its possession, custody or control.

Olesek Decl., ¶ 5; Ex. D at 12, 15, 17, 20, 23, 25, 29, 31, 34, 36, 39. Mr. Hein, an attorney who is/was the principal of Crown Point and its affiliate A-Tech (which was formed to license Plaintiff's patents), who was the main point of contact with Plaintiff and signed the contracts between Plaintiff and Crown Point/A-Tech, and who was the main point of contact with Cavium in pre-lawsuit communications, has provided no indication that his documents are being or have been provided by any other person or entity. Mr. Hein also has not indicated whether any documents are being withheld on the basis of any objection, and has not provided a privilege log or any indication whether documents are being withheld based on an assertion of privilege or attorney work product.

### F. Cavium Attempts to Meet and Confer, To No Avail

Cavium has met and conferred with Crown Point/Plaintiff's counsel on multiple occasions, both in writing on August 9, 14 and 21, and in person on August 30, concerning the corrupt documents, the deficiency of the responses, and the assertion of privilege as to hundreds

of responsive documents.  Olesek Decl., ¶¶ 6-11; Exs. E, F, G, H, I.  The documents called for by the Crown Point subpoenas were further discussed during depositions in late September, and Plaintiff produced a small number of its own Crown Point-related documents on September 25, but subsequently indicated during the September 25 deposition of the CEO that additional materials may be held by Crown Point.  Olesek Decl., ¶¶ 14, 15.  During her September 29 deposition, Plaintiff's CFO (another frequent contact with Crown Point concerning their licensing campaign) also indicated that Crown Point may have additional information about Crown Point's licensing activities on behalf of Plaintiff.  Olesek Decl., ¶ 16.

Cavium advised Crown Point's/Plaintiff's counsel in writing that numerous documents identified as responsive were corrupt, and provided the Bates numbers of all 45 documents.  Olesek Decl., ¶ 6; Ex. E.  After this correspondence went unanswered (despite ongoing exchanges with the same lawyers on other matters in the case), Cavium followed up again, and finally received a response indicating that Crown Point/Plaintiff's lawyers would make no attempt to provide readable documents and would provide no further explanation, stating "the files were identified as corrupt in native prior to production" and "there are no replacements to provide."  Olesek Decl., ¶¶ 7, 8; Exs. F, G.  Yet, Plaintiff's/Crown Point's counsel Bates labeled each document (some of which were multi-page documents), produced them, then months later (after receiving the subpoena) somehow evaluated these 45 documents to make a determination that they were responsive to the subpoena, then specifically identified them by Bates number as responsive to the particular requests in the subpoena to Crown Point.  Olesek Decl., ¶ 12.

After it became clear that Cavium would not be able to evaluate the responsiveness of the corrupt documents, Cavium sent a detailed letter on August 22 concerning all the deficiencies of the identical boilerplate responses and production, specifying the categories for which no

responsive documents were produced, asking Crown Point to specify what categories of documents, if any, were withheld on the basis of any non-privilege objection, and asking for explanations as to the numerous corrupted documents identified as responsive and the 244 documents from Plaintiff's privilege log identified as responsive to the subpoena to Crown Point. Olesek Decl., ¶ 9, Ex. H.  This letter also went unanswered until Cavium's counsel raised the issue in person with Crown Point/Plaintiff's counsel on August 30.  Olesek Decl., ¶ 10. That evening, Crown Point/Plaintiff's counsel sent a response letter, which indicated that Crown Point's responses would not be supplemented, that counsel believed based on its then-current investigation (prior to the late September discovery responses and depositions) that Crown Point did not have documents responsive to Request No. 1 and nothing was being withheld, and that he believed no further explanations were warranted. *See* Olesek Decl., ¶ 11, Ex. I.

### III.    ARGUMENT

#### A.    The Court Is Empowered To Enforce The Crown Point Subpoenas

Rule 45 of the Federal Rules of Civil Procedure authorizes a party to obtain discovery from a non-party to the action, including production of documents.  Fed. R. Civ. P. 45(a)(1)(D). This Court is empowered to compel further responses from Crown Point and Mr. Hein to Cavium's duly issued subpoenas.  *See United States Securities and Exchange Comm. v. Hyatt, et al.,* 621 F.3d 687, 694 (7th Cir. 2010); *Keaton v. Hannum, et al.*, 2013 WL 4481889 (S.D. Ind. Aug. 19, 2013).  As this district court has noted, where the subpoenaed non-party has an interest in the outcome of the case, this fact has been considered in determining whether an undue burden is presented by compliance with the subpoena. *Keaton,* 2013 WL 4481889 at *1.  Here, Crown Point and Mr. Hein apparently have a financial interest in the outcome of the Action and are intimately familiar with the issues in the Action.  Moreover, they are represented by Plaintiff's

counsel, which further reduces any purported burden of fully responding to Cavium's subpoenas. As detailed above, Cavium has made multiple good faith attempts to meet and confer in writing and in person with Crown Point's/Plaintiff's counsel concerning the deficiencies of Crown Point's responses and production, and has now exhausted all means of obtaining the requested documents from Plaintiff. Under the circumstances, an order now is warranted compelling Crown Point and Mr. Hein to conduct a reasonably diligent search, produce responsive documents and explain any withheld, lost or destroyed documents.

### B.    Crown Point Is A Key Player In The Texas Litigation

As explained above, Crown Point is hardly a disinterested third party. Indeed, Crown Point appears to have been closely involved in Plaintiff's patent assertion strategies, including the Texas Action. Plaintiff has effectively been insulated from providing key information and evidence concerning claims and defenses in this action by placing pre-suit communications and licensing efforts into the hands of a non-party, forcing Cavium to pursue non-party discovery. However, Plaintiff's relationship with Crown Point is belied by the fact that all the documents Crown Point cited as allegedly responsive were either produced by Plaintiff or listed on Plaintiff's privilege log. Crown Point is intimately familiar with the issues in this action, appears to have a stake in the outcome of the litigation, and is represented by Plaintiff's counsel.

### C.    Crown Point Must Conduct A Diligent Search For Responsive Documents

Plaintiff has repeatedly taken the position that evidence and information Cavium seeks about Crown Point (which is relevant to claims and defenses concerning damages, willfulness and contributory infringement) is in the possession, custody or control of Crown Point. Crown Point and its attorneys are well aware of the importance of these issues, and yet appear to have failed to perform a diligent search for Crown Point's documents responsive to each request as is

required of any subpoenaed non-party, much less one with substantial involvement and knowledge as to the underlying action.  The identical boilerplate response pasted into Crown Point's response to each and every request in the subpoena indicates a lack of attention and reasonably diligent evaluation of each request by Crown Point and its (Plaintiff's) counsel.

### D. Plaintiff's Licensing Arm, Crown Point, Failed To Produce A Single License, Draft License, Or Any Document Reflecting Any Terms or Negotiations

Crown Point was Plaintiff's licensing arm during the years leading up to the Action, which was filed in 2016.  In fact, Crown Point apparently formed a new entity, A-Tech, for the purpose of licensing Plaintiff's patents, which entity contacted Cavium through its principal, Andrew Hein.  Plaintiff served an interrogatory response in late September concerning these issues, which response included vague, limited factual information and indicated that Mr. Hein may have additional information.  During his deposition on September 25, Plaintiff's CEO, who was Plaintiff's Rule 30(b)(6) designee on all topics concerning efforts to license the Patents-in-Suit, had no knowledge of the limited facts stated in that interrogatory response.

After years of trying to license Plaintiff's patents, Crown Point has not produced a single license, draft license, covenant not to sue, term sheet, letter agreement, negotiation or any document or communication evidencing discussion of the value or cost of a license to any of the eight Patents-in-Suit or any portfolio that included any Patent-in-Suit.  Additional requests concerning documents reflecting the value of the patents and proposed licenses, validity of the patents, and Crown Point's financial interest in this Action also yielded no responsive documents in the set of Plaintiff's documents cited in Crown Point's responses.  Crown Point has failed to produce any documents itself, pointing only to the same limited set of documents from Plaintiff's production for each and every request, whether responsive to that request or not.  Crown Point and Mr. Hein should be compelled to conduct a diligent search for responsive documents and, if

no responsive documents exist, confirm that fact and explain the loss or destruction of any responsive documents.  If any documents have been withheld on the basis of privilege, Crown Point and Mr. Hein must provide a privilege log.

### E. Crown Point Should Address The Corruption Of Responsive Documents

A lack of reasonable diligence is reflected by the fact that 45 documents identified by counsel as responsive to each and every request of the Crown Point subpoena had been marked as "corrupted" prior to production, with no part of the document other than the "corrupt" notation visible.  Plaintiff's/Crown Point's counsel has declined to provide any explanation for why they added Bates numbers to them and produced them if they previously were corrupted, how they later determined the documents to be responsive to the subpoena if they cannot be read, and how they came to be corrupted and unreadable prior to production.  It appears from the Bates numbers that the documents in question were produced months **before** the Subpoenas were served, then were evaluated after the Subpoenas were served and determined to be responsive to the Subpoena requests given the citations to specific Bates numbers as responsive.  Counsel for Crown Point/Plaintiffs declined to provide any explanation for this apparent sequence of events.

Despite clear instructions served with the subpoena concerning the obligation to identify any responsive documents that are lost or destroyed, and the circumstances in which they came to be lost or destroyed, and multiple letters to Crown Point/Plaintiff's counsel seeking an explanation, Crown Point has refused to explain how it identified responsive documents that were corrupted and produced them as though they were readable.  Crown Point should be ordered to make a diligent attempt to provide readable versions of the responsive documents and provide a full explanation, including identification of the documents that were destroyed.

      **F.**      **Crown Point Must Specify Whether Responsive Documents Were Withheld**

The identical boilerplate objections and responses to each and every request is improper, and provides no meaningful notice as to what, if anything, has been withheld based on particular objections. Crown Point has not indicated whether it has withheld any document responsive to any request on the basis of an objection, and has not identified the objection and the documents withheld. *See* Fed. R. Civ. P. 34(b)(2)(C); 45(e)(2)(A). Crown Point also has failed to provide a privilege log for any documents for which it may be asserting privilege protection.

      **G.**      **Mr. Hein Should Be Compelled To Conduct A Diligent Search and Identify Documents That Have Been Withheld, Lost or Destroyed**

Plaintiff's CEO and CFO and the attorneys representing both Plaintiff and Mr. Hein have repeatedly stated that information they lack may be obtained from Mr. Hein, who appears to have control of any documents held by Crown Point. Based on his apparent extensive involvement with Plaintiff in connection with the current Action, as well as his training as an attorney, Mr. Hein should have a sufficient understanding of the import of Cavium's requests to evaluate each request and conduct a reasonable search to identify responsive documents. At a minimum, Mr. Hein should be ordered to conduct a diligent search and provide a written response indicating whether documents responsive to the subpoena have been lost or destroyed, identifying any responsive documents withheld on the basis of a particular objection, and provide a privilege log if any of his documents are being withheld on the basis of a privilege assertion.

**IV.**      **CONCLUSION**

For the reasons set forth above, Cavium respectfully requests that this Court order Crown Point and Mr. Hein to provide full and good faith responses, produce non-corrupted, responsive documents to Cavium, and identify documents withheld on the basis of an objection, and provide a privilege log for any documents they have withheld on the basis of a privilege objection.

As detailed in the Motion and the supporting Declaration of Megan Whyman Olesek and accompanying exhibits, Ms. Olesek attempted to resolve the dispute when she met and conferred in writing and in person with counsel for Crown Point and Mr. Hein (collectively "Crown Point") on multiple occasions concerning the relief sought in the Motion to Compel.  She sent written correspondence to Crown Point and Mr. Hein's counsel concerning the deficiencies of the responses and production by Crown Point and Mr. Hein on August 9, 14 and 22, 2017, addressed to Tina Lo and Michelle Clark of Quinn Emanuel, with a copy to the entire Quinn Emanuel case team (Crown Point's and Mr. Hein's counsel also are Plaintiff's counsel in the underlying action).  *See* Declaration of Megan Whyman Olesek in Support of Motion to Compel ("Olesek Decl."), ¶¶ 6, 7, 9; Exs. E, F, H.  Michelle Clark provided a written response to the August 9 and August 14 correspondence on August 14.  Olesek Decl. ¶ 8, Ex. G.  I also raised the issue of the Hein and Crown Point subpoenas and whether they would be providing a further response with Iman Lordgooei, counsel for Plaintiff, Crown Point and Mr. Hein, in person during a deposition break on August 30, 2017.  Olesek Decl. ¶ 10.  Counsel for Crown Point and Mr. Hein, Brian Dunne, responded further in writing on August 30, 2017.  Olesek Decl. ¶ 11, Ex. I.

        Respectfully submitted,

         *s/ Robert J. Schuckit*
        Robert J. Schuckit, Esq.
        Schuckit & Associates, P.C.
        4545 Northwestern Drive
        Zionsville, IN  46077
        Telephone:  317-363-2400
        Fax:  317-363-2257
        E-Mail:  rschuckit@schuckitlaw.com

        *Counsel for Plaintiff, Cavium, Inc.*

- 17 -

          Karineh Khachatourian (CA Bar No. 202634)
            (*Pro Hac Vice* Pending)
          Megan Whyman Olesek (CA Bar No. 191218)
            (*Pro Hac Vice* Pending)
          Duane Morris LLP
          2475 Hanover Street
          Palo Alto, CA  94304-1194
          Telephone: (650) 847-4150
          Fax: (650) 847-4151

          *Counsel for Plaintiff CAVIUM, INC.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing has been filed electronically on the **4th day of October, 2017**.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's electronic filing.

| None. | |
|---|---|

The undersigned further certifies that a true copy of the foregoing was served on the following parties via First Class, U.S. Mail, postage prepaid, on the **4th day of October, 2017**, properly addressed as follows:

| | |
|---|---|
| Crown Point Transactions LLC<br>c/o Andrew Hein<br>716 Adams Street, #H<br>Carmel, IN  46032 | Andrew Hein<br>933 Deer Lake Drive<br>Carmel, IN  46032-7759 |

*s/ Robert J. Schuckit*
Robert J. Schuckit, Esq.
Schuckit & Associates, P.C.
4545 Northwestern Drive
Zionsville, IN  46077
Telephone:  317-363-2400
Fax:  317-363-2257
E-Mail:  rschuckit@schuckitlaw.com

*Counsel for Plaintiff, Cavium, Inc.*